**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

**CLAIRE HARRISON**                                         **PLAINTIFF**

**V.**                              **CIVIL ACTION NO. 3:08CV269-HTW-LRA**

**LMA NORTH AMERICA, INC.**                         **DEFENDANT**

## DEFENDANT'S MEMORANDUM BRIEF IN
## SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant, LMA North America, Inc. ("LMA"), submits this memorandum brief in support of its Motion for Summary Judgment (the "Motion").  For the reasons set forth in its Motion and this Memorandum, LMA is entitled to summary judgment as a matter of law.

## I.  INTRODUCTION

Plaintiff, Claire Harrison ("Harrison" or "Plaintiff"), commenced this action on April 25, 2008.  In her Complaint, Plaintiff alleges that LMA negligently failed to supervise, and negligently retained, its Chief Executive Officer, Steve Block ("Block"); and violated Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, and Miss. Code Ann. § 79-1-9.  Plaintiff's Complaint, ¶ 31.  Specifically, Plaintiff alleges sexual harassment and that LMA, through Block, discriminated against her "because she is a woman" and "because she is over forty years old."  Id. at ¶¶ 28 and 29.  However, for the reasons set forth in this memorandum, Plaintiff's claims against LMA have no basis in the law or undisputed facts. There are no genuine issues of material fact, and LMA is entitled to judgment as a matter of law.

## II.  FACTS

LMA sells the LMA™ laryngeal mask airway line of supraglottic airway device products, designed to support patients' airways during surgery and thereafter.  On or about

February 21, 2005, Plaintiff, at age 56, was hired as a medical sales representative.  Shortly thereafter, in June 2005, Plaintiff was promoted to the position of Southern Division Sales Manager through which she became responsible for managing the sales representatives in her assigned region and ensuring that her region met its sales quota, quarterly and yearly.  Both Plaintiff's initial hire and subsequent promotion, also at age 56, were approved by Steve Block,[1] LMA's President and CEO.  Plaintiff's Deposition ("Plaintiff's Dep."), pp. 251:2-252:6.

In her first year as a division manager, Plaintiff's division ranked fifth of five (last), among the divisions in sales.  In 2006, her division ranked third of five, and in 2007, her division again ranked fifth of five.  LMA Sales Figures and Division Rankings, Exhibits 16 to 21 to Plaintiff's Dep., filed under seal.  Although she received a "meets expectations" rating at the end of 2006, her manager, Tom Bendinelli ("Bendinelli") observed that Plaintiff needed to increase her communications with him in order to work on her own development as a manager and to "develop strategies for deals in her division."  Plaintiff's Dep., p. 263:7-25; 2006 Performance Review, Bates labeled "LMANA 000223" through "LMANA 000229."

By the end of the first quarter of 2007, LMA determined that Plaintiff's division was underperforming.  Plaintiff's then-manager, Tom Bendinelli ("Bendinelli"), began verbal counseling sessions with Plaintiff about the poor sales performance of her region.  On or about March 20, 2007, Bendinelli had another verbal counseling session with Plaintiff, again noting her lack of communication and poor managerial decision-making.  Specifically, Plaintiff had unilaterally determined that three of her sales representatives should be out of their territories for two full days in the final week of the first quarter, which would lessen sales opportunities for Plaintiff's underperforming division.  Bendinelli vetoed Plaintiff's decision.

---

[1] Steve Block was more than 40 years old at the time Plaintiff was hired and subsequently promoted.

JM JRP 958012 v2
2138171-000264 01/14/2011

In May 2007, Mike Masilonis ("Masilonis") replaced Bendinelli as Plaintiff's manager. Masilonis had both verbal and email communications with Plaintiff about poor performance and the importance of giving accurate sales forecasts and meeting sales quota for her region.  At a division manager meeting in May 2007, Plaintiff was unable to answer questions about her sales representatives' territories, her division as a whole, and its sales quota.  The fact that a sales manager did not know the quota for her division, nor its progress toward meeting that quota, was significant and noticed by Block.  Block expressed his disappointment about Plaintiff's lack of preparation and lack of familiarity of key figures.

In June 2007, Plaintiff planned to have three sales representatives and herself attend a conference in Florida in the final three days of the second quarter.  Had Plaintiff's team been exceeding sales quota, this issue might not have been so critical; however, it was the same problem for which Bendinelli had counseled Plaintiff in March.  Masilonis again vetoed Plaintiff's decision, redirecting Plaintiff's sales representatives to focus on sales to meet quota for the quarter.

On or about July 8, 2007, Plaintiff was placed on a performance improvement program. July 8, 2007 Correspondence from LMA to Plaintiff, Exhibit 15 to Plaintiff's Dep.  On or about September 7, 2007, Masilonis reviewed Plaintiff's progress, noting that her efforts had improved in certain ways; however, Plaintiff and her division were still not meeting sales quota. Masilonis documented this session by letter to Plaintiff and by email to LMA's Human Resources Director, Ron Eck ("Eck").  September 13, 2007 Correspondence from LMA to Plaintiff, Exhibits 22 to Plaintiff's Dep.; Email Correspondence between Mike Masilonis and Ron Eck, Exhibit 23 to Plaintiff's Dep.

At end of the third quarter 2007, Plaintiff's division was fifth of five (last) in two critical measures and fifth in year-to-date performance.  Plaintiff's Dep., p. 281:1-23; LMA's September 2007 Sales Figures and Division Rankings, Exhibit 21 to Plaintiff's Dep.  Accordingly, on or about October 9, 2007, LMA decided to terminate Plaintiff's employment for poor performance in meeting sales quota and for ineffective management skills.  Plaintiff was terminated, effective October 12, 2007, and offered a severance package.  October 9, 2007 Correspondence from LMA to Plaintiff, Exhibit 24 to Plaintiff's Dep.

Plaintiff did not raise any complaints of unlawful conduct until two weeks after her termination through her written rejection of LMA's severance package.  Plaintiff's Dep., pp. 286:10-288:13; October 30, 2007 Correspondence from Plaintiff to Steve Block, Exhibit 25 to Plaintiff's Dep.  Instead of utilizing LMA's Complaint Procedures during her employment, Plaintiff raised for the first time allegations of wrongdoing in a letter addressed to Block to which Plaintiff copied Eck and the individual members of the Board of Directors of LMA's parent corporation, LMA International N.V.[2]  *Id.*

Even though Plaintiff was no longer employed there, LMA followed its Anti-Harassment policy and immediately began an investigation into her allegations.  Specifically, LMA retained the law firm of Duane Morris, LLP to conduct the investigation.  In furtherance of that investigation, Duane Morris attempted to contact Plaintiff on multiple occasions, yet Plaintiff refused to participate in the investigation, instead filing a Charge of Discrimination with the EEOC.  Plaintiff's Dep., pp. 361:19-362:3; p. 362:17-18.  Plaintiff's actions were contrary to LMA's established policies and deprived LMA of an opportunity to fully investigate her allegations and to take remedial action, if warranted.

[2] Plaintiff unquestionably knew how to contact Ron Eck, LMA's Human Resources Director, and every member of the Board had she chosen to comply with LMA's reporting policy.

### III.    ARGUMENT & AUTHORITIES

#### A.    STANDARD OF REVIEW

Summary judgment is not disfavored, but rather is looked upon as an important process through which parties can obtain a "just, speedy and inexpensive determination of every action." *See*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quotation omitted).  In fact, the Federal Rules of Civil Procedure were recently amended to reflect that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  *See also*, *Celotex*, 477 U.S. at 322.  The initial burden is on the movant to specify the basis upon which summary judgment should be granted and to identify portions of the record which demonstrate the absence of a genuine issue of material fact.  *Id*.  The burden then shifts to the non-movant to come forward with specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial.  *See*, *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  Summary judgment should be granted where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  *Celotex*, 477 U.S. at 322.

Furthermore, the existence of a mere scintilla of evidence in support of the non-movant's position is also insufficient.  *See*, *Liberty Lobby*, 477 U.S. at 252 (1986).  There must be evidence on which the jury could reasonably find for the non-movant.  At least one genuine issue of material fact must exist.  *Middleton v. Reynolds Metals Co*., 963 F.2d 881, 882 (6th Cir. 1992).

In *Liberty Lobby*, the court held:  "It is clear enough from our recent cases that at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial."  *Liberty*

- 5 -

*Lobby*, 477 U.S. at 249.  Furthermore, there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  *See*, *First Nat'l Bank of Arizona v. Cities Service Co*., 391 U.S. 253 (1968).

  **B. PLAINTIFF'S STATE LAW CLAIMS OF NEGLIGENT SUPERVISION AND NEGLIGENT RETENTION FAIL AS A MATTER OF LAW.**

  In her Complaint, Plaintiff alleges that LMA was negligent in failing to supervise and in retaining the CEO, Steve Block.  Complaint, ¶ 31.  To state a cause of action against LMA for negligent supervision and retention, Plaintiff must demonstrate that LMA had, or should have had, knowledge of some propensity on the part of Block to commit harassment and/or misconduct and that Plaintiff was injured as a result.  *See*, *Hollins v. City of Jackson*, 145 F. Supp. 2d 750, 761 (S.D. Miss. 2000).  Upon information and belief, Plaintiff will attempt to demonstrate that Block had a propensity to commit sexual harassment based upon nothing more than office gossip of an alleged affair between Block and another LMA employee.  Plaintiff's Dep., p. 72:7-12; p. 77:1-3; p. 79:12-18; p. 153:10-16; pp. 178:13-172:4.  Both Block and the other LMA employee unequivocally deny these allegations, and Plaintiff has offered no admissible or credible evidence to corroborate such slanderous claims.  With nothing more, her claim for negligent supervision and retention must fail as a matter of law.  *See*, *Raiola v. Chevron U.S.A., Inc*., 872 So. 2d 79, 86 (Miss. Ct. App. 2004)(summary judgment properly granted where plaintiff failed to make a formal complaint until after termination); Fed. R. Civ. P. 56(c)(2) ("A party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.").

  Moreover, workers compensation is the exclusive remedy for an employee who is injured during the course and scope of her employment.  Miss. Code Ann. § 71-3-9.  Therefore, Plaintiff's common law claims of negligent failure to supervise and negligent retention are

barred by the Mississippi Workers Compensation Act.  *See*, *Ward v. Bechtel Corp*., 102 F.3d 199, 203-204 (5th Cir. 1997)(analogous Texas workers compensation statute provided the exclusive remedy for injuries sustained in plaintiff's employment as a result of the employer's negligence, including negligent hiring, supervision, and retention claims).  There are no genuine issues of material fact on Plaintiff's claims of negligent supervision and retention, and LMA is entitled to judgment as a matter of law on these claims.

> **C.   MANY OF PLAINTIFF'S ALLEGATIONS ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS AND/OR FAILURE TO EXHAUST TO ADMINISTRATIVE REMEDIES.**

As a prerequisite to challenging alleged acts of harassment or discrimination in Court, Title VII and the ADEA require an employee to file a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") within 180 days of the discrete act(s) giving rise to the employee's claims under the statute.  42 U.S.C. §§ 2000e-5(e)(1), (f)(1).  The Supreme Court has interpreted this charge-filing provision to bar recovery under Title VII and ADEA for discrete acts of harassment occurring outside, before or after, the statute's filing period.  *Nat'l RR Passenger Corp. v. Morgan*, 536 U.S. 101, 105, 114 (2002) ("only incidents that took place within the timely filing period are actionable"); *see also*, *Ledbetter v. Goodyear Tire & Rubber Co., Inc*., 127 S. Ct. 2162, 2169 (2007) (reaffirming Morgan).   Plaintiff filed a Charge of Discrimination on November 5, 2007; accordingly, any alleged conduct prior to May 9, 2007 is time-barred.

Specifically, the following allegations are time-barred:

- **In early 2006**, the work environment started to become hostile toward women and senior employees.  Block indicated that he intended to fill all the management roles with young male employees.  Block stated he wanted to [sic] employees who were young and male to handle the jobs being handled by Plaintiff.  Plaintiff felt apprehensive that she may lose her job because of her gender and age.

- 7 -

Plaintiff's Complaint, ¶ 11 (emphasis added).

- As an employee over the age of forty (40) Plaintiff felt apprehensive that she may lose her job.  **In early 2006**, Block had also began to focus on purging employees who were not young and he made no attempt to hide the fact that he wanted to hire a specific type of employee that was limited to young persons.

Plaintiff's Complaint, ¶ 12 (emphasis added).

- That after Block had made attempts to start purging the positions of older women he also was making comments to other employees and management that he did not like Plaintiff and wanted to get rid of her. That on or about **January 3-6, 2006** Claire Harrison was told by the COO, Block that he would like to get to know her better.  Block again stated to Mrs. Harrison that he intended to get know her better **on or about January 15, 2006**.   It was clear to Mrs. Harrison that he was asking for sex.  Mrs. Harrison from that time forward tried to avoid being alone with Block.

Plaintiff's Complaint, ¶ 13 (emphasis added).

- **On or about January 19, 2007** Mrs. Harrison was on her way to a meeting when Block caught up to her and reminded her of his intent to get to know her.

Plaintiff's Complaint, ¶ 15 (emphasis added).

Plaintiff alleges that the skits, other team building activities, and alleged conduct of other LMA employees at the 2006 and 2007 National Sales Meetings created an alleged hostile work environment.  Plaintiff's Dep., PP. 127:11-128:24; pp. 149:11-150:25.  These meetings were held in January both years.   As such, all of Plaintiff's allegations based upon conduct at LMA National Sales Meetings are time-barred and may not be considered in evaluating Plaintiff's claims.

Similarly, any alleged conduct that occurred after the EEOC issued Plaintiff a Notice of Right to Sue on January 25, 2008 (Exhibit 5 to Plaintiff's Deposition) is barred for failure to exhaust administrative remedies.   Under Title VII, Plaintiff must exhaust all administrative remedies before initiating a civil cause of action in federal court.  *Taylor v. Books-a-Million,*

*Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002); 42 U.S.C. § 2000e-5(e) and (f).  As such, Plaintiff must be able to demonstrate that she has complied with two jurisdictional prerequisites:  1) that she filed a charge with the EEOC, and 2) that she has received a statutory notice of right to sue.  *Taylor*, 296 F.3d at 378-79.  *See also*, *Nilsen v. City of Moss Point, Mississippi*, 621 F.2d 117, 120 (5th Cir. 1980); *Green v. Forney Engineering Co.*, 589 F.2d 243, 246 (5th Cir. 1979); *Beverly v. Lone Star Lead Construction Corp.*, 437 F.2d 1136, 1139-40 (5th Cir. 1971).  The Notice of Right to Sue is an unconditional statement from the EEOC that it does not intend to bring suit on behalf of the Charging Party and notifies Plaintiff that her administrative remedies with the EEOC have been exhausted.  *Beverly*, 437 F.2d at 1140.  Additionally, the "scope of the inquiry at a court hearing in a Title VII action is not limited to the charge brought before the EEOC; it is limited to the scope of the EEOC investigation that reasonably can be expected to result from the charge."  *O'Neal v. Roadway Exp.*, No. No. 05-30648, 181 Fed. Appx. 417, 419-20 (5th Cir. May 11, 2006).  This implies that a charge must be open and pending with the EEOC to fall within the scope of the EEOC investigation.  As such, any conduct that occurred after January 25, 2008, the date the EEOC closed its investigation and issued the Right to Sue Notice, could not, and was not, investigated by the EEOC and cannot form the basis any claim in Plaintiff's Complaint.  Specifically, Plaintiff refers to alleged conduct at the January 2009 National Sales Meeting to support her hostile work environment claim.  This alleged conduct was not investigated by the EEOC, and any alleged conduct at the January 2009 National Sales Meeting is completely irrelevant to this matter as Plaintiff was terminated fifteen months prior to the event and she did not attend the event.  Similarly, Plaintiff relies on an April 25, 2008, LMA Organizational Changes Memorandum and an April 25, 2008 LMA Corporate Management Structure Diagram.  *See*, Exhibits 27 and 28 to Plaintiff's Dep.  These documents were not

considered by the EEOC and should be excluded as potential evidence to support Plaintiff's claims.

### D.    PLAINTIFF'S CLAIM OF DISCRIMINATION "BECAUSE SHE IS A WOMAN" FAILS AS A MATTER OF LAW UNDER TITLE VII.

Plaintiff claims that she was discriminated against "because of" her gender and that she was subjected to sexual harassment from her former supervisor, Steve Block, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").   Title VII makes it an unlawful employment practice for an employer to discriminate against any individual with respect to his or her compensation, terms, conditions, or privileges of employment "*because of* such individual's . . . sex."   42 U.S.C. § 2000e-2(a)(1) (emphasis added).   There are two types of discrimination based upon sex – gender discrimination and sexual harassment.   As described in more detail below, Plaintiff's claim that she was discriminated against "because she is a woman" fails as a matter of law, and LMA is entitled to judgment accordingly.

### 1.    Plaintiff's Claim of Gender Discrimination Fails as a Matter of Law.

The order and allocation of the burden of proof for a Title VII disparate treatment gender discrimination claim is governed by the evidentiary framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 803 (1973).   *See*, *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1980); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992); *Cooper v. City of North Olmstead,* 795 F.2d 1265, 1270 (6th Cir. 1986).

As such, Plaintiff first must establish a *prima facie* case of discrimination by a preponderance of the evidence.  *Burdine*, 450 U.S. at 252-53.  If plaintiff succeeds, the burden of production then shifts to LMA to articulate a legitimate, non-discriminatory reason for the adverse action.  *Galbreath* v. *Northern Telecom, Inc*., 944 F.2d 275, 279 (6th Cir. 1991) (citing *Burdine*, 450 U.S. at 253), *cert. denied,* 503 U.S. 945 (1992).  Termination of an employee who,

- 10 -

in the exercise of management's considered business judgment, is unsatisfactory, is a legitimate, nondiscriminatory business reason. *Walton v. Bisco Industries, Inc.*, 119 F.3d 368 (5th Cir. 1997); *Jackson v. Pepsi-Cola*, 783 F.2d 50 (6th Cir. 1986); *Hill v. Seaboard Coast Line R. Co.*, 767 F.2d 771 (11th Cir. 1985); *Wooden v. Board of Educ. Jefferson City*, 931 F.2d 376 (6th Cir. 1991); *Ellison v. Darden Restaurants Inc.* 52 F. Supp. 2d 747 (S.D. Miss. 1999). Once Defendant has come forward with a legitimate, non-discriminatory reason for an adverse action, Plaintiff may only prevail if she establishes by a preponderance of the evidence that the non-discriminatory reason articulated by Defendant was only a pretext for prohibited discrimination, in this case, gender. *St. Mary's Honor Center v. Hicks*, 113 S. Ct. 2742 (1993). In order to make this rebuttal showing, Plaintiff may not rely simply upon her *prima facie* evidence but must, instead, introduce additional evidence of discrimination. *Manzer v. Diamond Shamrock Chemicals Co*., 29 F.3d 1078, 1084 (6th Cir. 1994). Plaintiff not only bears the burden of making a *prima facie* case, but at all times bears the "ultimate burden of persuasion." *St. Mary's Honor Ctr.* at 2747 (1993) (citing *Burdine*, 450 U.S. at 256); *Wrenn v. Gould*, 808 F.2d 493 (6th Cir. 1987), *cert. denied*, 485 U.S. 1015 (1988); *Canitia v. Yellow Freight System*, 903 F.2d 1064 (6th Cir. 1990), *reh'g denied, cert. denied*, 111 S. Ct. 516 (1990). This Plaintiff cannot carry that burden.

A *prima facie* case under Title VII is generally established when Plaintiff proves (1) she is a member of a protected class; (2) she was qualified for the position; (3) that despite her qualifications, she was terminated; and (4) after she was terminated, the employer sought applicants among persons having her qualifications or that a comparable, non-protected person was selected to replace her. *McDonnell Douglas Corp.*, 411 U.S. at 802; *Patterson v. McClean Credit Union,* 491 U.S. 164 (1989); *Brown v. State of Tenn.*, 693 F.2d 600 (6th Cir. 1982). That

- 11 -

is, that a comparable non-protected person was treated better. *Davis v. Monsanto Chemical Co.*, 858 F.2d 345 (6th Cir. 1988), *cert. denied*, 490 U.S. 1110 (1989). Each element of a *prima facie* case must be met. *Patterson* at 491 U.S. 187, n.7; *Mitchell v. Toledo Hospital* 964 F.2d 577, 583 (6th Cir. 1992); *Grano v. City of Columbus,* 699 F.2d 836 (6th Cir.1983), citing *McDonnell Douglas*, *supra*. Moreover, it is appropriate to consider evidence related to Plaintiff's basic competence for the position at issue and consider Plaintiff's lack of job-related skills for the job in determining if Plaintiff has made a *prima facie* case. *Oden v. Oktibbeha County*, 246 F.3d 458, 469 (5th Cir. 2001); *Fine v. GAF Chemical Corp*., 995 F.2d 576, 577 (5th Cir. 1993); *Walker v. Jim Dandy Co*., 638 F.2d 1330, 1333 (5th Cir. 1981).

In this case, Plaintiff cannot meet her burden of proof on her gender discrimination claim with respect to making a *prima facie* case. LMA admits that Plaintiff is a member of a protected class, that she was terminated, and that she was replaced by a man, Mike Couch. However, Plaintiff cannot, and has not, offered any evidence to demonstrate that she was qualified for the position she held. In fact, the evidence demonstrates quite the contrary. Namely, the undisputed evidence reflects that Plaintiff had multiple counseling sessions with two different managers, and she was placed on a performance improvement plan prior to her termination. Plaintiff's Dep., p. 261: 7-12; July 8, 2007 Correspondence from LMA to Plaintiff, Exhibit 15 to Plaintiff's Dep.; and September 13, 2007 Correspondence from LMA to Plaintiff, Exhibit 22 to Plaintiff's Dep. As such, she was not qualified for the position she held. Therefore, she cannot demonstrate a prima facie case, and the Court should dismiss her gender discrimination claim accordingly.

Even assuming *arguendo* Plaintiff could establish a prima facie case, which she cannot, LMA has articulated a legitimate non-discriminatory reason for Plaintiff's termination – LMA exercised its reasonable business judgment to terminate an employee who exhibited

- 12 -

unsatisfactory job performance.  Specifically, LMA's sales records reflect, and Plaintiff admitted, that the division for which she was the manager consistently ranked last among the divisions. Plaintiff's Dep., pp. 267:9-273:1; pp. 277:10-278:8; pp. 279:13-280:12; p. 281:1-19; LMA Sales Figures and Division Rankings, Exhibits 16-21 to Plaintiff's Dep.  For that reason, LMA terminated Plaintiff's employment relationship.  October 9, 2007 Correspondence from LMA to Plaintiff, Exhibit 24 to Plaintiff's Dep.  LMA has articulated a legitimate, non-discriminatory reason for Plaintiff's termination, and Plaintiff's gender discrimination claim should be dismissed accordingly.

Moreover, Plaintiff cannot show that Defendant's explanation for its actions was a pretext. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Teamsters v. United States,* 431 U.S. 324 (1978); *Furnco Constr. Corp. v. Waters*, 436 U.S. 567 (1978); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1980); *Ward's Cove Packing  Co. v. Atonio,* 490 U.S. 642 (1989); *St. Mary's Honor Center v. Hicks,* 509 U.S. 113 (1993) (plaintiff must prove that defendant's explanation is *both* false *and* that illegal discrimination is the real reason for the challenged action).  To prove pretext, Plaintiff must prove that the challenged disparate treatment was motivated by an unlawful discriminatory intent.  *Teamsters v. United States*, 431 U.S. 324, 355 (1979).   The relevant issue is the employer's motivation "not the perceptions of the [plaintiff]."  *Wrenn v. Gould,* 808 F.2d 493, 502 (6th Cir. 1987), *cert. denied*, 485 U.S. 1015 (1988); *Galbreath v. Northern Telecom, Inc.,* 944 F.2d 275, 282 (6th Cir. 1991), *cert. denied*, 503 U.S. 942 (1992), holding "a reason is legitimate for purposes of civil rights laws, if it is non-discriminatory, even if it is mean-spirited, ill-considered, inconsistent with humane personnel policies, or otherwise objectionable."  Grievances unrelated to discrimination do not constitute

- 13 -

statutorily protected activities. *Coutu v. Martin County Bd. of County Com'rs,* 47 F.3d 1068, 1074 (11th Cir. 1995).

Specifically, the undisputed evidence demonstrates that Plaintiff was initially hired and subsequently promoted, and Block approved the promotion.  Plaintiff's Dep., pp. 251:2-252:6. Additionally, Plaintiff has no admissible evidence to support her claim that Block wished to create a "fraternity of young, white men."  In fact, the undisputed evidence shows that Mark Manning, LMA's Central Division Sales Manager, was terminated one month prior to Plaintiff. At the time of his termination, Manning was a 32-year-old, white male – an ideal candidate for Block's alleged fraternity.  Attachment D to LMA's EEOC Position Statement, "LMANA 000258" through "LMANA 000268."  Moreover, of the five terminations that occurred in 2007, Plaintiff was the only female, *i.e.* more men were terminated than women.  Attachment E to LMA's EEOC Position Statement, "LMANA 000269" through "LMANA 000303."  Plaintiff cannot demonstrate a prima facie case, nor demonstrate that LMA's legitimate non-discriminatory reason for her termination was pretextual.  Accordingly, Plaintiff's claims should be dismissed as a matter of law.

**2.     The Plaintiff's Claims of Sexual Harassment Fails as a Matter of Law.**

a.     There is no basis for a *quid pro quo* claim.

In her Complaint, Plaintiff does not expressly raise a claim of *quid pro quo* harassment, instead asserting a "hostile work environment" claim.  To allow Plaintiff to attempt to assert such a claim now would be prejudicial and improper.  *See*, *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007); Fed. R. Civ. P. 8(a)(1).  However, even if Plaintiff's Complaint did allege a claim for *quid pro quo* harassment, Plaintiff has no admissible or credible evidence to support such a claim.

- 14 -

Specifically, Plaintiff's allegations that Block said that "he would like to get to know her better" in January 2006 and January 2007 are time-barred as described in Part B. above. Additionally, Plaintiff alleges that Block propositioned her in May 2007. However, Plaintiff admits that there is not even a single witness to the alleged *quid pro quo* sexual harassment by Steve Block in May 2007, and her unsupported allegations alone are insufficient to survive summary judgment. Plaintiff's Dep. p. 95:7-13. *See also*, *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986)(the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to survive summary judgment); Fed. R. Civ. P. 56(c)(2). As such, there are no genuine issues of material fact, and LMA is entitled to judgment as a matter of law on any *quid pro quo* harassment claim asserted by Plaintiff.

       b.    Title VII Analytical Framework:  The *Ellerth/Faragher* Road Map.

Plaintiff alleges a claim for hostile work environment ("HWE"). Such claims are controlled by a pair of companion cases, the United States Supreme Court outlined the methodology for analyzing claims of sexual harassment by a supervisor. *See*, *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998). Additionally, the Fifth Circuit Court of Appeals has reinforced this methodology, following step by step the *Ellerth/Faragher* road map laid out by the Supreme Court. *Casiano v. AT&T Corp.*, 213 F.3d 278 (5th Cir. 2000). The Fifth Circuit described this road map as follows:

> At the first stop on the *Ellerth/Faragher* road map, courts are required to determine whether the complaining employee has or has not suffered a "tangible employment action." If he has not, his suit is classified as a "hostile environment" case. That determination provides a fork in the road on the *Ellerth/Faragher* map . . . . On this branch, a different inquiry ensues at the second stop: If proved, would the actions ascribed to the supervisor by the employee constitute severe or pervasive sexual harassment? If they do not, Title VII imposes no vicarious liability on the employer; but if they do, the employer is vicariously liable -- *unless* the employer can prove both prongs of the *Ellerth/Faragher* affirmative defense, to wit: Absent a tangible employment action, (1) the employer exercised reasonable care to prevent and correct promptly any such sexual harassment, and (2) the employee unreasonably

- 15 -

failed to take advantage of any preventative or corrective opportunities provided by the employer to avoid harm otherwise.

*Id*. at 283-84 (emphasis in origin).

The Court must determine whether the actions which the employee complains of constitute severe or pervasive harassment. *Id*. at 284. "The Supreme Court has explained that in order to be actionable under [Title VII], a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive so." *May v. AutoZone Stores, Inc.*, 179 F. Supp. 2d 682, 687 (N.D. Miss. 2001). In making this determination, the Court must look at all of the circumstances of the case including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*. (quoting *Faragher*, 524 U.S. at 810). The alleged harassing conduct "must be extreme to amount to a change in the terms and conditions of employment." *Faragher*, 524 U.S. at 788. Such standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a "general civility" code. *Id*. That is, "Title VII was only meant to bar conduct that is so severe and pervasive that it destroys a protected classmember's opportunity to succeed in the workplace." *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996).

If the Court determines that the alleged behavior was, in fact, both objectively and subjectively severe and pervasive, then the Court will further consider whether the employer may utilize an affirmative defense. Pursuant to the *Ellerth/Faragher* road map, an employer may escape any liability for the sexually harassing conduct of its supervisor(s) if (1) the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior and (2) the plaintiff employee unreasonably failed to take advantage of any preventative or corrective

- 16 -

opportunities provided by the employer to avoid harm. *Young v. R.R. Morrison & Son, Inc.*, 159 F. Supp. 2d 921, 923 (N.D. Miss. 2000). This defense promotes Title VII's equally basic policies of encouraging forethought by employers and of saving action by objecting employees. *Id*. (citing *Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 764).

In applying this standard, the complaining employee had a duty pursuant to LMA's Anti-Harassment Policy to report harassing behavior and "speculative concerns about management inaction are insufficient to justify a failure to report." *Young*, 159 F. Supp. 2d at 927. "If the preventative purpose of Title VII is to be effective, harassment victims must step forward and at least give management an opportunity to provide a remedy." *Id*.

Upon application of the *Ellerth/Faragher* road map to the present action, it is clear that Plaintiff cannot assert a sexual harassment claim against LMA as a matter of law.

        c.     <u>The Alleged Conduct of Steve Block Does Not Constitute Severe or Pervasive Sexual Harassment</u>.

As mentioned above, the specific mandate of Title VII and case law promulgated thereunder require that the complained of conduct must be "because of" the individual's sex. 42 U.S.C. § 2000e-2(a)(1). Moreover, *Faragher* and its progeny make clear that a complaining plaintiff faces a very high threshold of proof in this regard:

> All of the sexual hostile environment cases decided by the Supreme Court have involved patterns or allegations of extensive, long lasting, unredressed, and uninhibited sexual threats or conduct that permeated the plaintiff's work environment. The *extreme facts* recited in those cases highlight the intensity of the objectionable conduct that must be present in order to constitute an actionable hostile environment claim.

*Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 264 (5th Cir. 1999) (internal citations omitted)(emphasis added). The facts as alleged in Plaintiff's Complaint do not meet this exacting criterion.

- 17 -

A review of the facts and evidence submitted reveals that, in the instant litigation, none of the alleged conduct undermined Plaintiff's workplace competence.   Likewise, the purported conduct did not destroy Plaintiff's opportunity to succeed in the workplace.  She was unaffected both professionally and personally.   Specifically, to support her claim of a hostile work environment, Plaintiff complains of the alleged conduct that occurred as the 2006 and 2007 National Sales Meetings that occurred once per year.  As detailed above, any alleged conduct from these meetings is time-barred and should not be considered by the Court.  Notwithstanding, any alleged conduct at these sales meetings was not "so severe or pervasive" as to interfere with Plaintiff's day-to-day performance of her job responsibilities as a division manager.  As a result, the alleged harassment asserted by Plaintiff cannot form the basis of an actionable claim under Title VII.  Plaintiff's claim of sexual harassment must be dismissed.

> d.   Because Plaintiff Failed to Take Advantage of LMA Established Anti-Harassment Policy, She Cannot State a Sexual Harassment Claim against the Company.

Even in the event that the Court finds the alleged harassing conduct to have been subjectively abusive, Plaintiff cannot impose vicarious liability on LMA because of its established and disseminated Anti-Harassment Policy which Harrison failed to invoke and with which she refused to cooperate when LMA attempted to investigate her allegations.  Plaintiff's Dep., pp. pp. 245:21-13; pp. 246:20-247:15; pp. 242:15-244:22; pp. 226:12-228:17; p. 253:1-4; pp. 254:11-255:2; pp. 361:19-362:3; p. 362:17-18.   Consistent with the *Ellerth/Faragher* standard, LMA cannot be held vicariously liable for the alleged sexual harassment because (a) the alleged harassment was not severe or pervasive and (b) LMA exercised reasonable care to prevent and correct any such harassment.   Further, Plaintiff unreasonably failed to take advantage of LMA's preventative and corrective opportunities.  *See*, *Harper v. City of Jackson Municipal School Dist.*, 414 F. Supp. 2d 595, 605-08 (S.D. Miss. 2005); *Slay v. Glickman*, 137 F.

- 18 -

Supp. 2d 743, 750-53 (S.D. Miss. 2001).  LMA is an equal opportunity employer, and it takes appropriate measures to prevent the type of conduct complained of by Plaintiff.  It is the company's goal that all employees are treated fairly and equally, without regard to their sex, and LMA strives, through its policies and practices, to maintain a positive, harassment free environment in which to work.

As a threshold matter, LMA has and disseminates, as part of its employee orientation training, policies which address Equal Employment Opportunity and Anti-Harassment.  In fact, this Plaintiff received such training and executed two LMA training records, acknowledging that she had "completed the above identified training" and showed comprehension of the policy through completion of a quiz, class room interaction, and role play.  Plaintiff's Dep., pp. pp. 245:21-13; pp. 246:20-247:15; pp. 242:15-244:22; pp. 226:12-228:17; p. 253:1-4; pp. 254:11-255:2; LMA's Employee Handbook, LMA's Sexual Harassment Prevention PowerPoint for Employees, LMA's March 29, 2005 Training Record, LMA's Sexual Harassment Prevention PowerPoint for Sales Management and July 7, 2005 Training Record, Exhibits 10, 11, 12, and 14, respectively, to Plaintiff's Dep.   The touchstone of LMA's Anti-Harassment Policy is the requirement that those who believe themselves to be the victims of harassment or discrimination must report the harassment, and Plaintiff admitted that she understood that touchstone.  Plaintiff's Dep. p. 228:12-17.

Plaintiff claims that she was subjected to sexual harassment from Steve Block, and that she was thus discriminated against "because of" sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").  Regardless of Block's actions,[3] LMA exercised reasonable care to prevent and promptly respond to any complaints of sexually harassing behavior.  Plaintiff admits

---

[3] Any impropriety of which is vehemently denied.

- 19 -

that she was familiar with LMA's handbook which contained an anti-harassment and reporting policy; she understood and signed for them.  Plaintiff's Dep., pp. pp. 245:21-13; pp. 246:20-247:15; pp. 242:15-244:22; pp. 226:12-228:17; p. 253:1-4; pp. 254:11-255:2; and Exhibits 10, 11, 12, and 14 to Plaintiff's Dep.   Plaintiff, however, unreasonably failed to take advantage of the preventative and corrective opportunities provided by LMA to avoid harm.  Plaintiff's Dep., p. 60:7-10; p. 129:16-21; p. 295:14-25.

During her employment with LMA, Harrison attended anti-harassment training at LMA, first as an employee and then again as a member of management, where the Anti-Harassment Policy was discussed in detail and where she was afforded the opportunity to meet with a corporate representative.  The training further contained the procedure that should be followed by employees who are believe they have been the victim of sexual harassment.  Plaintiff's Dep., pp. 226:12-228:17; pp. 242:15-244:22; pp. 254:11-2.   Additionally, at each training session, LMA presented a copy of its Anti-Harassment Policy to Harrison.

Although the Anti-Harassment Policy specifically directed employees to contact LMA's corporate office regarding allegations of sexual harassment, Plaintiff admittedly failed to utilize this procedure.  Plaintiff's Dep., p. 60:7-10; p. 129:16-21; p. 295:14-25.  Specifically, Plaintiff argues that she complained about the contents of a skit to Gordon Krass, her first supervisor.  Plaintiff's Dep., p. 129:9-15.   However, Krass was terminated from LMA in October 2006.  Transcript of the Deposition of Gordon Krass ("Krass Dep."), p. 69:21-25.  His separation from LMA occurred 11 months prior to Plaintiff's termination and seven (7) months outside the actionable period for her claims.   Additionally, even Krass testified that no one from LMA complained to him about any alleged inappropriate conduct or any type of sexual harassment by

- 20 -

Steve Block.  Krass Dep., p. 33:1-5; p. 43:12-13.  Moreover, Plaintiff admitted that she did not complain to any other members of management subsequent to Krass leaving LMA:

> Q.  All right.  Now, that was in '06.  Did you report to anyone that that skit was troubling to you?
>
> A.  I believe earlier in my conversations with you, I told Gordon –
>
> Q.  Right.
>
> A.  -- I thought it was inappropriate.
>
> Q.  Did you tell Ron Eck?
>
> A.  No.
>
> Q.  Member of the board?
>
> A.  No.
>
> Q.  Mike Masilonis?
>
> A.  No.
>
> …
>
> Q.  Who was your manager after Gordon Krass?
>
> A.  Tom Bendinelli.
>
> Q.  Did you talk to Tom Bendinelli about it?
>
> A.  No.
>
> Q.  Who was the manager after Tom Bendinelli?
>
> A.  Mike Masilonis.
>
> Q.  Did you talk to Mike Masilonis about it?
>
> A.  No.

Plaintiff's Dep., p. 129:9-21; p. 295:14-25.

It is undisputed that Plaintiff failed to report any conduct which she alleges occurred during the actionable period covered by her EEOC Charge, i.e. any conduct that allegedly

- 21 -

occurred from May 9, 2007 to Plaintiff's filing of the EEOC Charge on November 5, 2007.  Such inaction is unreasonable as a matter of law.  "[S]peculative concerns about management inaction are insufficient to justify a failure to report."  *Young*, 159 F. Supp. 2d at 927.  "If the preventative purpose of Title VII is to be effective, harassment victims must step forward and at least give management an opportunity to provide a remedy."  *Id*.  Plaintiff's failure to do so is unreasonable and defeats her Title VII claim as a matter of law.

Further, even after Plaintiff was terminated and when LMA became aware of Harrison's allegations through her letter to Steve Block (Exhibit 25 to Plaintiff's Complaint), the Company immediately retained Duane Morris, LLP and attempted to investigate Plaintiff's allegations. Again, Plaintiff refused to cooperate with the investigation.  Plaintiff's Dep., pp. 361:19-362:17-18.

In sum, LMA's well-established and effectively communicated Anti-Harassment Policy and Plaintiff's failure to take reasonable advantage of this policy negate Plaintiff's sexual harassment claim against LMA a matter of law.  *See*, *Casiano v. AT&T Corp.*, 213 F.3d 278, 286-87 (5th Cir. 2000).  Therefore, there are no genuine issues of material fact, and LMA is entitled to judgment as a matter of law on Plaintiff's claim of sexual harassment.

### E.    PLAINTIFF'S CLAIM OF DISCRIMINATION "BECAUSE SHE IS OVER FORTY YEARS OLD" FAILS AS MATTER OF LAW UNDER THE ADEA.

Plaintiff claims that LMA intentionally discriminated against her by terminating her because of her age in violation of the Age Discrimination in Employment Act ("ADEA"). Plaintiff's allegations are incredulous.  She was 56 years old when she was hired as a sales representative and then promoted to division sales manager.  Plaintiff's Dep. pp. 251:19-252:6; February 14, 2005 Correspondence from LMA to Plaintiff, Exhibit 9 to Plaintiff's Dep.; June 3, 2005 Correspondence from LMA to Plaintiff, Exhibit 13 to Plaintiff's Dep.  She was interviewed

- 22 -

by, and both her hiring and promotion were approved by, Steve Block, who is also over 40. Plaintiff's Dep. pp. 251:2-252:6.  Finally, she was replaced by someone who was over 40 years old.  Her claim that she was fired because of her age has no basis in fact or law.

In order to establish her claim of age discrimination, Plaintiff must prove, by a preponderance of the evidence, that (1) she was over the age of forty (40); (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) her age was the reason that she was subject to the adverse employment action or a that a comparable, non-protected person was selected to replace her.  *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957 (5th Cir. 1993).

Once Defendant has come forward with a legitimate, non-discriminatory reason for an adverse action, Plaintiff may only prevail if she establishes by a preponderance of the evidence that the non-discriminatory reason articulated by Defendant was only a pretext for prohibited discrimination, in this case, age.  *St. Mary's Honor Center v. Hicks*, 113 S. Ct. 2742 (1993).  In order for the Plaintiff to prove pretext, she must demonstrate by a preponderance of the evidence (1) that LMA's stated reason for its employment decision was false and (2) that age discrimination "was a determinative or motivating influence on" LMA's decision-making process.  This Plaintiff cannot meet this burden.

In determining whether LMA's stated reason is pretextual, Plaintiff's own subjective belief that LMA's reasons are false is not enough.  Additionally, for the second requirement – that age discrimination had a determinative or motivating influence on LMA's actions – age-related comments may only serve as sufficient evidence of discrimination if they are proximate in time to the discharge, made by an individual with authority over the challenged employment decision, and directly related to that employment decision.  Specifically, Plaintiff claims she was

- 23 -

terminated to further Block's alleged goal of creating "a fraternity of young, white men."  Mere "stray remarks" - comments which are vague and remote in time - however, are insufficient to establish discrimination.  *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993); *Price v. Marathon Cheese Corp.*, 119 F.3d 330, 337 (5th Cir. 1997); *E.E.O.C. v. Louisiana Office of Community Services*, 47 F.3d 1438, 1443-44 (5th Cir. 1995); *Bauer v. Albemarle Corp.*, 169 F.3d 962  (5th Cir.  1999); *Haas v. Advo Sys.*, 168 F.3d 732, 733 (5th Cir. 1999); *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655 (5th Cir. 1996).

Plaintiff cannot establish age discrimination.  Specifically, Plaintiff cannot make a prima facie case of age discrimination.  Similar to the analysis of her claim for gender discrimination, Plaintiff cannot establish that she was qualified for the position she held.   The undisputed evidence reflects that Plaintiff had multiple counseling sessions with two different managers, and she was placed on a performance improvement plan prior to her termination.  Plaintiff's Dep., p. 261: 7-12; Exhibits 15 and 22 to Plaintiff's Dep.  Moreover, as stated above, Plaintiff was over 40 when she was hired and subsequently promoted.  Plaintiff's replacement, Mike Couch, was over the age of 40 at the time of his selection for the position.  Ron Eck Deposition ("Eck Dep."), pp. 71:5-72:4.

Even assuming *arguendo* Plaintiff could establish a prima facie case, which she cannot, LMA has articulated a legitimate non-discriminatory reason for Plaintiff's termination – LMA exercised its reasonable business judgment to terminate an employee who exhibited unsatisfactory job performance.  Specifically, LMA's sales records reflect, and Plaintiff admitted, that the division for which she was the manager, consistently ranked last among the divisions.  Plaintiff's Dep., pp. 267:9-273:1; pp. 277:10-278:8; pp. 279:13-280:12; p. 281:1-19; Exhibits 16-21 to Plaintiff's Dep.

- 24 -

Plaintiff simply cannot demonstrate a prima facie case nor carry her burden of establishing pretext.  She was initially hired and subsequently promoted while over the age of 50, and Block, who is also over 40, approved the promotion.  Plaintiff's Dep., pp. 251:2-252:6.  Moreover, she was replaced by someone over 40.  There are no genuine issues of material fact, and LMA is entitled to a judgment as a matter of law on Plaintiff's age discrimination claim.

### F.   PLAINTIFF'S CLAIM UNDER MISS. CODE ANN. § 79-1-9 FAILS AS A MATTER OF LAW.

Section 79-1-9 of the Mississippi Code states the following:

> Any corporation doing business in this state shall be liable to a penalty of two hundred fifty dollars ($250.00) for every unlawful interference with the social, civil, or political rights of any of its agents or employees, and the same may be recovered by suit, to be brought by the injured party.

Miss. Code Ann. § 79-1-9.

Because LMA is a corporation doing business within the State of Mississippi, this statute is applicable.  However, the term "every unlawful interference" is not defined by the statute, and the Mississippi appellate courts have not addressed the issue.  Presumably, if Plaintiff could establish a violation of Title VII or the ADEA, she could also establish a violation of § 79-1-9, and she would be entitled to a civil penalty of $250.00 from LMA.  However, for the reasons stated herein, Plaintiff cannot establish a violation of Title VII or the ADEA; as such, she cannot establish a violation of § 79-1-9.  There are no genuine issues of material fact, and LMA is entitled to judgment as a matter of law on Plaintiff's claim under Miss. Code Ann. § 79-1-9.

### IV.   CONCLUSION

Based on the undisputed facts, Plaintiff cannot maintain an actionable claim against LMA.  Plaintiff's state law claims of negligent supervision and negligent retention fail as a matter of law, and they are precluded by the exclusive remedy provision of the Mississippi Workers' Compensation Act.  Plaintiff's claims under Title VII and the ADEA are barred by the

- 25 -

applicable statute of limitations and/or for failure to exhaust administrative remedies, or simply fail because there is no issue of material fact.  As such, Plaintiff's claims of discrimination "because she is a woman" and "because she is over forty years old" fail as matter of law. Because Plaintiff cannot establish a violation of Title VII or the ADEA, there are no genuine issues of material fact as to Plaintiff's claim under Miss. Code Ann. § 79-1-9, and the Court should dismiss it accordingly.  In summary, there are no genuine issues of any material fact, and LMA is entitled to judgment as a matter of law as to all claims.  Accordingly, LMA requests that the Court dismiss Plaintiff's claim against it and grant LMA any and all other appropriate relief.

This, the 14th day January, 2011.

Respectfully submitted,

**LMA NORTH AMERICA, INC.**

By its Attorneys,

BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC

/s/ J. Randall Patterson
J. RANDALL PATTERSON

J. Randall Patterson (MSB #9012)
Jennifer G. Hall (MSB # 100809)
BAKER, DONELSON, BEARMAN,
 CALDWELL & BERKOWITZ
A Professional Corporation
4268 I-55 North
Meadowbrook Office Park
Jackson, Mississippi  39211
Telephone:    (601) 351-2400
Facsimile:    (601) 351-2424

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing Memorandum Brief in Support of

Motion for Summary Judgment with the Clerk of the Court using the ECF system which sent

notification of such filing to the following:

       James Ashley Ogden (ashleyogden@aol.com)
       Wendy M. Yuan (wendy@ogdenandassoc.com)
       **COUNSEL FOR PLAINTIFF**

       This, the 14th day of January, 2011.


                    /s/ J. Randall Patterson
                    J. RANDALL PATTERSON

JM JRP 958012 v2
2138171-000264 01/14/2011